```
         IN THE UNITED STATES DISTRICT COURT FOR THE
                  EASTERN DISTRICT OF OKLAHOMA

JAMES T. LEE,                      )
                                   )
              Plaintiff,           )
                                   )
v.                                 )    Case No. CIV-12-102-KEW
                                   )
CARBONYX, INC. d/b/a               )
CARBONYX CARBON TECHNOLOGIES       )
and TURCK, INC.,                   )
                                   )
              Defendants.          )
```

## OPINION AND ORDER

This matter comes before the Court on Defendant's Motion for Summary Judgment (Docket Entry #38). Upon review and consideration of the briefs filed by the parties, this Court renders this ruling.

On June 17, 2010, Plaintiff James T. Lee ("Lee"), an employee of Oasis Staffing ("Oasis"), was working at Defendant Carbonyx, Inc.'s ("Carbonyx") facility located in Ardmore, Oklahoma. The facility operates as a test facility and coal plant, producing a product called Cokonyx. This production requires that coal be heated in a kiln over a 24 hour period. Thereafter, the heated coal is loaded on a transfer car, taken to an unloader, is shaken, and is finally cooled.

Problems developed with the transfer cars where a sensor on the cars would melt from exposure to hot coal or would not line up correctly such that the transfer car would not move. This problem arose when the sides of the cars were bent from the kiln and the heated coal or were "banged on", usually by forklifts, so that the

metal was not read correctly by the sensor.  In order to move the transfer cars, workers would use a metal rod to pass in front of the sensor and "trick" the rail car into moving so that other cars coming out of the kiln could move.

On the relevant date, Lee was sweeping and shoveling coal or Cokonyx that had fallen off of the cars.  The transfer car stopped moving and another worker at the plant, Edward Jack Richards ("Richards"), responded to the problem.  When he arrived at the stalled car, Richards observed Lee sweeping in the area.  He asked Lee to grab a piece of metal, put it in front of the sensor on the car, and keep it in place until the car arrived back at the kiln.  Lee walked along with the car in a "hunched over" position, placing the metal piece in front of the sensor.  Richards observed Lee jump in between a beam and the transfer car and become pinched.  Richards estimated the clearance between the beam and the car was approximately four inches.  Richards testified he hit the emergency stop and began "bumping" the car in reverse, releasing Lee.  Lee sustained injury as a result of being trapped between the beam and the transfer car.

Lee obtained medical benefits and compensation for his injuries in a worker's compensation proceeding in Oklahoma.  In all of the documentation arising from the proceeding, Oasis was identified as Lee's employer.  Oasis was ultimately responsible for the payment of benefits to Lee.

On October 31, 2011, Lee initiated an action against Carbonyx and Turck, Inc. ("Turck"), the manufacturer of the sensor used on the transfer cars in the District Court in and for Carter County, Oklahoma.  The action was removed to this Court on March 8, 2012.

Lee alleges that the sensor was defective or faulty when it was designed, manufactured, distributed and sold by Turck.  Lee also alleges that Carbonyx designed and manufactured the rail car which injured him.  Lee states that the rail car lacked adequate guarding to prevent crushing and burning injuries.  He alleges Carbonyx knew of the defective sensor and intentionally caused it to be bypassed in order to keep the work process moving.  Carbonyx knew or should have known of the risk of injury and foreseeable harm that would result.  Lee further alleges Defendants failed to warn him of the dangers associated with their defective products and acted with reckless disregard for the rights of others, acted intentionally, and in a wanton or oppressive manner which was life threatening.

In the subject Motion, Carbonyx contends (1) it did not manufacture the subject transfer car; (2) no "guarding" was included with the product when it was purchased and that any guarding would render the product useless; (3) Lee failed to demonstrate that the sensor or the car was defective since his own act of using the metal to "trick" the sensor caused his injuries; (4) Lee cannot prove Carbonyx knew of the defective sensor; (5)

3

Carbonyx could not foresee Lee's injury since he was the only person who knew of the alleged malfunction of the sensor; (6) Lee cannot prove Carbonyx failed to warn him of the risk of injury since he received safety training and acted against that training when he was injured; (7) Carbonyx cannot be considered to have acted in reckless disregard of Lee's safety since he elected to use the metal rod to activate the sensor; (8) Carbonyx was not Lee's employer and he received compensation from Oasis as a result of the worker's compensation proceedings; and (9) Lee cannot show an intentional tort occurred by his employer such that the exclusivity provisions of the Oklahoma Worker's Compensation Act do not preclude further recovery.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that, there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The moving party bears the initial burden of showing that there is an absence of any issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553-54, 91 L.Ed.2d 265 (1986).  A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106

S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986).  In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party.  <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).  Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial.  <u>Posey v. Skyline Corp.</u>, 702 F.2d 102, 105 (7th Cir. 1983).

In his responsive brief, Lee initially contends that this summary judgment motion is premature, stating that only the deposition of Richards had thus far been taken.[1]  Lee does not comply with Fed. R. Civ. P. 56(d) which requires that an affidavit or declaration be submitted by the nonmovant when, "for specified reasons, it cannot present facts essential to justify its opposition. . . ."  As a result, the Motion will be considered.

The first of Carbonyx's arguments to which Lee responds is the exclusivity of worker's compensation.  Carbonyx's position is somewhat paradoxical. On the one hand, Carbonyx appears to argue with no citation to case authority that it was not Lee's employer, Oasis was his employer, and therefore the exclusivity of remedy under Oklahoma's worker's compensation laws precludes further

---

[1] The briefing was later supplemented with the deposition of Brandon Darden, a former employee of Carbonyx.

claims against Carbonyx. If Carbonyx is not Lee's employer, then exclusivity only extends to Oasis as Lee's employer and not Carbonyx. *See* Price v. Howard, 236 P.3d 82, 87 (Okla. 2010)("The statutory language makes it clear that the Legislature intended that accidental injuries will fall within the confines of the Workers' Compensation Act and that an **employer's** liability for these injuries is exclusive under the act.")(emphasis added by this Court).

Absent in the briefing is any legal analysis of Carbonyx's position as Lee's employer. When faced with Carbonyx's albeit brief argument that it is not Lee's employer and Oasis bears all liability of injury, Lee simply ignores the position in his response and assumes Carbonyx was his employer at the time of the accident, citing to the exception to exclusivity recognized in the case of Parret v. UNICCO Serv. Co., 127 P.3d 572 (Okla. 2005). Neither party proceeds through the necessary analysis under Oklahoma law of Lee's potential position as a "loaned servant" to Carbonyx and Carbonyx's position as a "special employer," regardless of the contract between Oasis and Carbonyx. *See* Ragsdale v. Wheelabrator Clean Water Systems, Inc., 959 P.2d 20, 22-23 (Okla. App. 1998); VanZant v. Peoples Elec. Co-Op, 900 P.2d 1008, 1011 (Okla. App. 1995). This Court has insufficient facts surrounding the employment relationship between Carbonyx and Lee to rule upon whether Carbonyx was Lee's employer at the time of the

6

accident. Until this relationship is established, any analysis of Parret is premature as the briefing and analysis presented by the parties is deficient.

Carbonyx also contends in its Motion that it did not manufacture the subject rail car as alleged in the original Petition. To support this allegation, Carbonyx attaches a copy of an invoice from Star Engineering, Inc. ("Star") dated February 10, 2010 showing delivery of a "Star Pit Type Automatic Electro-Mechanical/Hydraulic Transfer Car (TC-2) - for Kiln Exit - per Quotation 5791. . . ." Other than referencing certain warnings provided by Star, Lee once again does not address this issue. Therefore, it is deemed confessed. To the extent Lee's Petition alleges "the subject rail car was designed and manufactured by Carbonyx," "the subject rail car lacked adequate guarding to prevent crushing and burning injuries such as to which Plaintiff was subjected," that the rail car was "defective," and that Carbonyx "failed to warn Plaintiff of the dangers associated with [its] defective product," Carbonyx is entitled to summary judgment on any such claim for strict products liability.

Carbonyx next contends in its Motion that Lee could not prove it knew of the defective sensors which were apparently manufactured by Turck. In the briefing provided by the parties[2], no evidence

---

[2] The Court acknowledges that Turck did not file a summary judgment motion and only participated in the briefing to file a reply. Its reply was limited to contesting Lee's assertion that the sensors it manufactured were defective.

has been presented that the sensors were defective or did not function as they were designed. Rather, the sensors did not operate correctly under the conditions which Carbonyx utilized them. Carbonyx's employees routinely used a piece of metal or a rod to "trick" the sensors into allowing the transfer cars to move. Richards testified that such a procedure was employed 12-13 times in a 12 hour work shift. Thus, while it is true that Lee has not demonstrated that Carbonyx knew that the sensors were "defective," it has been sufficiently shown through the evidence that Carbonyx and its supervisory employees knew that the sensors did not function correctly under the conditions and in the manner in which they were used and required employees to "trick" the sensors into operating as needed. Because of the imprecise manner in which Lee plead his claims in the state court petition, it is not clear whether he included a claim for negligence or some other claim to which the assertion of knowledge of the condition may apply. At this time, summary judgment will not be granted on this issue as it might pertain to a claim other than strict products liability.

Carbonyx also seeks summary judgment as to whether the accident or harm which Lee ultimately suffered was foreseeable. The record contains conflicting evidence concerning whether the particular harm was foreseeable by Carbonyx. Clearly, Carbonyx knew that the sensors were being "tricked" by its employees in order to keep the rail cars moving. The record is not clear as to

all of the safety purposes for which Star included the sensors on the rail cars. Carbonyx's contention in the briefing that "[t]he only person who knew of a malfunction was Plaintiff and the only one who could foresee a potential problem was Plaintiff" is, at best, disingenuous. The limited testimony developed in the record demonstrates the problem with the manner in which the sensors functioned in the facility was well known by employees, including supervisory personnel. Summary judgment is not appropriate on this issue.

Carbonyx further asserts that Lee cannot demonstrate a "failure to warn [him] of the dangers of the work environment." Carbonyx cites to general safety materials which were provided to Lee but nothing concerning the safe operation of the rail car and sensor he was asked to "trick." Summary judgment will not be granted on this issue as well.

Summary judgment is also not appropriate on the issue of whether Carbonyx acted with reckless disregard to Lee's rights or in an intentional manner. Again, Carbonyx contends Lee "discovered an alleged fault with the sensor and, on his own, elected to strike same with a steel rod." This contention is directly contradicted by the evidence. Richards asked Lee to use the rod and Lee followed the instructions he was provided. Whether Carbonyx's actions rise to the level of "intentional" or constitutes a "reckless disregard" is best left to the trier of fact based upon

the limited record developed for this summary judgment motion.

IT IS THEREFORE ORDERED that Defendant Carbonyx, Inc.'s Motion for Summary Judgment (Docket Entry #38) is hereby **GRANTED** as to Lee's strict products liability claim against Defendant Carbonyx, Inc. only.  The remainder of the Motion is hereby **DENIED**.

IT IS SO ORDERED this 18th day of July, 2013.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE