# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMES T. LEE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-12-102-KEW |
| ) | |
| CARBONYX, INC. d/b/a ) | |
| CARBONYX CARBON TECHNOLOGIES ) | |
| and TURCK, INC., ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

This matter comes before the Court on Defendant Turck's Motion for Summary Judgment (Docket Entry #77). Upon review and consideration of the briefs filed by the parties, this Court renders this ruling.

## Statement of Material Facts

On June 17, 2010, Plaintiff James T. Lee ("Lee"), a worker provided by Oasis Staffing, was working at Defendant Carbonyx, Inc.'s ("Carbonyx") facility located in Ardmore, Oklahoma. Carbonyx produces a product called Cokonyx, a form of coke used in the steel manufacturing process. Carbonyx's automated production process utilizes a transfer car system to transport Cokonyx at various stages of the manufacturing process. The Cokonyx billets are loaded onto a kiln car and passed through a high-heat kiln tunnel before the kiln car is loaded onto the transfer car. The billets are cooked in the kiln for up to twenty-four hours at temperatures between 2,300 and 2,500 degrees Fahrenheit. The

loaded kiln car is then cooled by jets of water and transported to the unloading area by the transfer car where a large scraper pushes the Cokonyx off the kiln car and onto a conveyor belt which carries the billets out of the facility. The transfer car then backs away from the unloading area to the return tracks where the kiln car is pushed off the transfer car. The transfer car then returns to the kiln exit to receive another loaded kiln car.

Carbonyx commissioned Star Engineering ("Star") to design and manufacture the transfer car system. Star employed proximity sensors which were designed and manufactured by Werner Turck GmbH and distributed in the United States by Turck, Inc. ("Turck"), on the transfer car to detect the presence of the kiln car once loaded on the transfer car. The proximity sensor is generally designed to sense or detect a standard metal target within an assured distance. The target for the sensors on the transfer car was a metal skirt which hangs from the kiln car.

Once the sensor detects the metal skirt on the kiln car, the transfer car will begin moving the kiln car on the tracks. The transfer car will only move when moth proximity sensors on the transfer car detect the metal skirt of the kiln car. If the sensor does not detect the metal skirt or target, the transfer car will not move.

The manufacture and design of the Turck sensor is governed by the International Electro-Technical Commission ("IEC"), which

2

prepares and publishes international and industry standards for all electrical and electronic related technologies including proximity sensors. These standards are used to determine rated operating distance, assured operating distance, and other operational specifications. The rated operating distance is a conventional quantity used to designate the nominal operating distance. It does not take into account either manufacturing tolerances or variations due to external conditions such as voltage and temperature. The proximity sensor at issue has a rated or nominal operating range of 75 millimeters.

The assured range is defined as between 0 and 81% of the rated operating distance. It is the range within which the operation of the proximity sensor under specified voltage and temperature ranges is guaranteed. The Turck sensor used by Star in the process employed by Carbonyx is guaranteed to operate, if used under specified voltage and temperatures, up to 81% of 75 millimeters or up to a detection distance of 60.75 millimeters. The specified operational temperature at which the range of the sensor at issue is guaranteed is -13º F to 185º F (inclusive of a 10% to 15% temperature drift).

According to Tony Udelhoven, the designated corporate representative for Turck, Turck did not have input in the design of the transfer car system at issue in this case. To his knowledge, Star did not call Turck to ask for input in the system. Further,

Turck's records indicate that there was no direct sales between Star and Turck. Additionally, Turck did not participate in the installation of the proximity sensor in the transfer car system at the Carbonyx plant.

The transfer car system operated without incident for a time in the Carbonyx facility. Problems developed with the transfer car, however, when the target or metal skirt of the kiln car was taken out of the proximity sensor's detection range. This condition was as a result of external problems present at the Carbonyx plan including (a) hot Cokonyx falling on, melting, and/or blocking the sensor at issue; (b) the kiln cars and skirts being warped from the excessive heat in the kiln tunnel; (c) the kiln cars and skirts being bent by forklifts; (d) the kiln cars and skirts being bent from falling off the tracks; and/or (e) the kiln cars and skirts being jostled when loaded onto the transfer car or when the Cokonyx was scraped off in the unloading area. Brandon Darden ("Darden"), Lee's direct supervisor at Carbonyx, testified that the proximity sensor always detected metal when placed in range of the sensor and the problems with the sensor not detecting the kiln cars were caused by the damage to the kiln car skirting or heating of the sensors.

When the proximity sensor did not detect its target because of the conditions identified above, the transfer car would not move. Carbonyx employees would place a metal object in front of the

proximity sensor to "trick" it into detecting its target in an effort to keep the manufacturing process moving. Every time a piece of metal was placed within the range of the proximity sensor, the sensor would detect the metal and cause the transfer car to move.

On the relevant date, Lee was sweeping and shoveling coal or Cokonyx that had fallen off of the cars. The transfer car stopped moving and another worker at the plant, Edward Jack Richards ("Richards"), responded to the problem. When he arrived at the stalled car, Richards observed Lee sweeping in the area. He asked Lee to grab a piece of metal, put it in front of the sensor on the car, and keep it in place until the car arrived back at the kiln. Lee walked along with the car in a "hunched over" position, placing the metal piece in front of the sensor. Richards observed Lee jump in between a beam and the transfer car and become pinched. Richards estimated the clearance between the beam and the car was approximately four inches. Richards testified he hit the emergency stop and began "bumping" the car in reverse, releasing Lee. Lee sustained injury as a result of being trapped between the beam and the transfer car.

Richards, a maintenance electrician for Carbonyx, testified that the sensors never failed to detect metal and there was nothing wrong with the Turck proximity sensor.

During an inspection of the sensor subsequent to Lee's

accident and as part of the litigation discovery process, the kiln car skirt was observed to be positioned between 60 and 61.5 millimeters away from the Turck proximity sensor. Additionally, during the inspection, the range at which the sensor was observed to detect its target was 63.5 millimeters. As stated, the assured range of the sensor as established by Turck was 60.75 millimeters.

Turck's product catalog provided to distributors, purchaser, and users of its sensors provides as follows:

> Turck sensors and peripheral devices **DO NOT** include the self-checking redundant circuitry required to permit their use in personnel safety applications. A device failure or malfunction can result in either an energized or de-energized output condition.
>
> Never use these products as sensing devices for personnel protection. Their use as safety devices may create unsafe conditions that could lead to serious bodily injury or death.

On October 31, 2011, Lee initiated this action against Carbonyx and Turck in the District Court in and for Carter County, Oklahoma, alleging products liability and negligence claims. The action was removed to this Court on March 8, 2012.

Turck filed the subject Motion contending it is entitled to summary judgment on all claims because (1) this Court has determined that the proximity sensor was not defective in a prior ruling; (2) Lee has not presented legally sufficient evidence of a products liability claim against Turck; (3) Turck had no duty to warn Lee of any risks associated with the proximity sensor; (4) the misuse of the sensors bars recovery in this action; (5) Lee cannot

6

maintain a negligence claim against Turck; and (6) the proximity sensor was not the proximate cause of Lee's injury.  Turck also asserts that Lee is not entitled to a claim for punitive damages under the facts of this case.  This latter claim presumes, of course, that one or more causes of action survives summary judgment.

### **Standard on Summary Judgment**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that, there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The moving party bears the initial burden of showing that there is an absence of any issues of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553-54, 91 L.Ed.2d 265 (1986).  A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986).  In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).  Once the moving party has met its burden, the

opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983). With the exception of the statement concerning whether Star contacted Turck in the installation of the sensor, Lee did not contest any of the material facts as alleged by Turck and set forth substantially verbatim above. Lee cited to the addition of other facts which it contends precludes summary judgment. This Court will discuss the failure to include these facts below.

## **Law of the Case**

Turck first contends that this Court found the proximity sensor was not defective in the Opinion and Order entered July 18, 2013 in relation to Carbonyx's summary judgment motion. Turck argues this finding represents the law of the case and should be enforced as to Lee's claims against it. This Court specifically found that the briefing provided by Lee and Carbonyx did not contain evidence that the sensors were defective or did not function as they were designed.

The law of the case doctrine is "a restriction self-imposed by the courts in the interests of judicial efficiency." Gage v. General Motors Corp., 796 F.3d 345, 349 (10th Cir. 1986). The doctrine only applies when there has been a final decision. Id. Because it was not shown Carbonyx was the manufacturer of the

8

sensor as Lee originally alleged in the Petition, the issue of defect was only obliquely addressed as it pertained to whether Carbonyx had knowledge of the manner in which the sensor functioned as it was installed in its facility. Since Turck had not participated in this issue in the briefing and the specifics of the defect had not been alleged, this Court will not apply the law of the case doctrine to this finding.

**Evidence of Products Liability Claim and Causation**

Turck accurately sets forth the current state of the law on products liability in Oklahoma. In order to prevail on such a claim, Lee must demonstrate that (1) the product was the cause of the injury ("the mere possibility that it might have caused the injury is not enough."); (2) the defect existed in the product at the time the product left the manufacturer's possession and control; and (3) the defect made the product unreasonably dangerous to him. Kirkland v. General Motors Corp., 521 P.2d 1353, 1362-63 (Okla. 1974).

Lee's theory of a defect in the proximity sensor is stated in his response as "[h]ad the subject sensor not failed to detect the kiln car, Plaintiff would not have had to approach the car and 'trick' it; hence, he would not have been injured." This theory at the outset is fundamentally flawed on the required element of causation. In Oklahoma, "[c]ausation is established if 'in a natural and continuous sequence, unbroken by independent cause; the

[product] produces an injury that would not have occurred if it had not been administered." Korban v. Boostpower U.S.A., Inc., 533 Fed. Appx. 820, 823 (Okla. 2013) citing Hollander v. Sandoz Pharm. Corp., 289 F.3d 1193, 1214 (10th Cir. 2002)(citation omitted). Turck's repeated assertion is inescapable - if the proximity sensor it manufactures does not perform as designed in the system in which it was installed at the Carbonyx facility, the transfer car stops. The stopping of the transfer car did not cause Lee's injury. Lee's use of the metal rod to "trick" the sensor into causing the transfer car to move represented an intervening act which broke the causal connection between the sensor's operation and the injury Lee sustained. If Lee had done nothing, no injury would have resulted. Thus, Lee has failed to demonstrate the required element of causation and a reasonable jury could not conclude that the failure of the sensor to detect the kiln car caused Lee's injury.

Additionally, nothing in the evidentiary record demonstrates the proximity sensor was defective in either its manufacture or design. Lee's assertion that "[t]he application and environment in which the subject sensor was utilized was both intended by and foreseeable to Defendant, whose website contemplates the use of its sensors in dangerous environments such as foundries and chemical plants." Lee's Proposed Statement of Undisputed Material Facts No. 26. While Turck's website identified numerous sites where its sensors were utilized, Lee did not provide evidence that the

10

extreme conditions of temperature were present at these facilities as was present at Carbonyx.  Rather, Lee engages in supposition in stating in a footnote that the conditions were comparable.

Lee's main objection to the operation of the proximity sensor rests with the distinction between the "rated operating distance" and the "assured operating distance" as those terms are used in the industry.  The IEC which establishes the industry standards in proximity sensors define these terms.  The "rated operating distance" is defined as "a conventional quantity used to designate the operating distances.  It does not take into account either manufacturing tolerances or variations due to external conditions such as voltage and temperature."  IEC Standard 60947-5-2, Sec. 2.3.1.1.  The "assured operating distance" is defined as "the distance for the sensing face within which the correct operation of the proximity switch under specified conditions is assured."  IEC Standard 60947-5-2, Sec. 2.3.1.7.

The Turck proximity sensor indicated on its face that it had a "rated operating distance" of 75 mm.  The "assured operating distance" as set forth in Turck's literature is between 0 and 81% of the "rated operating distance" or 60.75 mm.  The product performed within this range upon inspection after the accident. The evidence is deficient as to the existence of a manufacturing or

design defect.[1]

Indeed, the evidence from those who used the sensors indicates they functioned properly. Certainly, the sensor's operation did not make it an unreasonably dangerous product.

Lee also contends Turck failed to warn of the differences between these two distances as only the "rated operating distance" is on the face of the sensor. Again, Lee's failure to warn claim cannot be maintained because the causal connection between the alleged failure and the injury is lacking. "The manufacturer of a product has a duty to warn the consumer of potential dangers which may occur from the use of the product when it is known or should be known that hazards exist." Tortorelli v. Mercy Health Ctr., Inc., 242 P.3d 549, 558 (Okla. Civ. App. 2010) quoting McKee v. Moore, 648 P.2d 21, 23 (Okla. 1982). "To recover, a plaintiff must establish both that the injury was caused by the product and by a failure to warn of a possible detrimental reaction." Id.; *See also* Duane v. Oklahoma Gas & Elec. Co., 833 P.2d 284, 286 (Okla. 1992)("The plaintiff must establish that the failure to warn was a

---

[1] This Court specifically rejects Lee's addition to the Statement of Undisputed Material Facts No. 30 as a mischaracterization of the evidence in the record. Lee states that the sensor did not function properly at the "assured operating distance", attributing the statement to Turck's corporate representative. In fact, Mr. Udelhoven testified that the "assured operating distance" would be specific to the particular application where the sensor was utilized due to differences in the shape of the object it was detecting. Additionally, the post-accident inspection demonstrated that the sensor at issue in this case detected its target within the outer bounds of its "assured operating distance."

proximate, producing cause of the injuries received.")

In this case, the record is devoid of evidence to indicate that the failure to include a warning on or around the sensor that the "assured operating distance" was somewhat shorter than the "rated operating distance" caused Lee's injury. Clearly, the evidence establishes that the cause of his injury is directly attributable to the use of the metal rod to cause the sensor to do something it was not doing. Simply put, if Lee had done nothing to attempt to circumvent the limitations of the sensor, he would not have been injured.

**Leave to File Answer to Include Misuse**

Turck also contends that the sensor was misused or abused by Carbonyx such that it cannot be held liable under strict products liability. This Court must first address the failure of Turck to include this defense in its answer. Turck has filed a motion requesting that it be permitted to file an answer out of time. The defense of alteration, misuse, and abuse of the product. Lee objects to permitting Turck to file an answer as it has failed to give an adequate basis for its failure. In particular, Lee objects to the inclusion of affirmative defenses into this action at this late date.

In Oklahoma, misuse of a product is an affirmative defense to a products liability claim. Black v. M & W Gear Co., 269 F.3d 1220, 1234 (10th Cir. 2001)(citation omitted). As such, it must be

13

specifically plead.

This Court (and the parties) have not identified relevant case authority in allowing the filing of an omitted answer to include affirmative defenses. However, the case authority governing the allowance of the amendment of an answer to include affirmative defenses is instructive.

"Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." Bylin v. Billings, 568 F.3d 1224, 1229 (10th Cir. 2009) quoting Frank v. U.S. West, Inc., 3 F.3d 1357, 1365 (10th Cir. 1993). The delay has certainly been extended since this case was removed to this Court on March 8, 2012 and Turck did not file its Motion until December 20, 2013. In essence, Turck's counsel states that he "cannot explain" the omission.

This Court is most concerned with any prejudice the filing of the answer with affirmative defenses included might heap upon Lee. From all indications, Lee did not raise the matter until December 19, 2013 when counsel was preparing a proposed pretrial order which precipitated the filing of the subject Motion. An examination of prior filings in the case indicates that Joint Status Report submitted by counsel contained Turck's specific defenses of (1) a denial that Lee showed the sensor at issue was manufactured by

Turck; (2) a denial the sensor was defective; and (3) a denial that the sensor was "used in its intended manner." Joint Status Report filed April 27, 2012 (Docket Entry #13). In Turck's summary judgment motion, the defense of misuse was alleged. Turck's Motion for Summary Judgment filed August 26, 2013 (Docket Entry #77), p. 18. In response, Lee did not address misuse let alone object to its inclusion as an issue on summary judgment as having not previously been plead.

In short, the record indicates the parties were aware that the misuse defense was being alleged relatively early in the case. Lee cannot now claim surprise or prejudice based upon the omitted answer and attendant affirmative defense. As a result, Turck will be permitted to file an Answer to the Petition but may only include the affirmative defense of misuse. The remaining affirmative defenses asserted in the proposed Answer which accompanied the Motion for Leave to File an Answer Out of Time have not previously asserted in this case with adequate specificity to put Lee on notice of their inclusion in this action.

## **Misuse**

Turck contends its proximity sensor was misused or abused in the manner in which it was utilized in the Carbonyx facility.[2] In

---

[2] The misuse defense is cited here only as an alternative finding since this Court has determined that the evidence does not indicate the sensors were defective or that they caused Lee's injury. To the extent the sensors' failure was attributable to melting as Darden testified occurred on some occasions, misuse through exposure to extreme temperatures was the cause of the

15

Oklahoma, "an abnormal use or misuse of [a] product . . . is a complete defense to strict liability." Kirkland, 521 P.2d at 1367. "Generally when we speak of the defense of misuse or abnormal use of a product we are referring to cases where the method of using a product is not that which the maker intended or is a use that could not reasonably be anticipated by a manufacturer." Fields v. Volkswagen of America, Inc., 555 P.2d 48, 56 (Okla. 1976).

Turck's literature clearly indicates the operational temperature range for the proximity sensor at issue in this case is -13° F to 185° F, inclusive of a 10% to 15% temperature drift. Carbonyx utilized the sensor in conditions exceeding these temperature limitations. Both the "rated operating distance" and the "assured operating distance" for this product were conditioned upon the voltage and temperature specifications. The failure of Star and Carbonyx to use the product under the specified temperature conditions constituted a misuse of the product as the product was not used as Turck intended.[3]

---

condition.

[3] Turck also asserts that sophisticated user defense, contending that its product was intended for those who were experienced in the use of their product. This Court does not address this defense because it must be plead affirmatively and Turck did not do so in its proposed Answer to the Petition or in any other filings other than the Reply in connection with its summary judgment motion. In the event the defense is not required to be affirmatively set forth in an Answer, it does appear that at least in connection to the duty to warn claim, "where a product is used in an industrial setting by one supposedly skilled at his job, a manufacturer has 'no duty to warn of dangers inherent in the task or which are created by oversight or negligence of the contractor

16

## **Negligence Claim**

Turck contends it is unsure whether Lee is also pursuing a claim for negligence against it but maintains that the evidence does not support a finding of simple negligence. Lee does not address this contention in his response. As such is the case, he is deemed to have confessed the argument and waived any such claim.

This Court need not address the arguments concerning the propriety of punitive damages since Turck is entitled to summary judgment on all claims asserted against it.

IT IS THEREFORE ORDERED that Defendant Turck, Inc.'s Motion for Leave to File Answer Out of Time (Docket Entry #103) is hereby **GRANTED**, in part. Turck, Inc. may file its Answer out of time but may assert the sole affirmative defense of misuse/abuse of the product no later than **JANUARY 21, 2014**.

IT IS FURTHER ORDERED that Defendant Turck's Motion for Summary Judgment (Docket Entry #77) is hereby **GRANTED** on all claims asserted against it in this action.

IT IS FURTHER ORDERED that Defendant Turck's Motion to Strike Plaintiff's Expert Witnesses (Docket Entry #78); Defendant Turck's *Daubert* Motion to Strike Plaintiff's Expert Witnesses (Docket Entry

---

or fellow employees.'" Duane, 833 P.2d at 287. The manufacturer is entitled to assume that professional users of its product will heed its warnings. Hutchins v. Silicone Specialties, Inc., 881 P.2d. 64,67 (Okla. 1993). If it could assert the defense, Turck would be entitled to rely upon the skill of the purchaser of the product, Star and Carbonyx, in setting forth its warnings and expecting them to be followed.

#107); Defendant Turck's Motions in Limine (Docket Entry #113); and Defendant Turck's Objections to Plaintiff's Designation of Deposition Testimony of Tony Udelhoven (Docket Entry #114) are hereby deemed **MOOT**. Additionally, the *Daubert* hearing set on January 16, 2014 at 10:00 a.m. is hereby **STRICKEN**, since the associated Motion is moot.

IT IS SO ORDERED this 14th day of January, 2014.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE